UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                        )
                                              )
    DAVID L. NEALEY                      )    Case No. 10-10606-SSM
    HEIDI M. NEALEY                      )    Chapter 13
                                              )
        Debtors                          )

**MEMORANDUM OPINION**

Before the court is the objection of Thomas P. Gorman, the standing chapter 13 trustee, to confirmation of a modified plan filed by the debtors on January 19, 2011.  The issues are, first, whether the plan may properly provide for 100% payment of a criminal restitution claim while paying other unsecured creditors zero cents on the dollar; and second, whether the trustee may pay such a claim in the absence of a timely-filed proof of claim by or on behalf of the creditor entitled to the restitution.  A hearing was held on February 23, 2011, at which the court heard the contentions of the parties and took the issues under advisement.  For the reasons stated, confirmation will be denied.

<u>Background</u>

David L. Nealy and Heidi M. Nealey are husband and wife.  He is a self-employed mason; she is a nurse.  They filed a joint voluntary petition in this court on January 27, 2010, for adjustment of their debts under chapter 13 of the Bankruptcy Code.  On their schedules, they listed $189,232 in general unsecured debts, of which $126,550 consisted of federal income tax liabilities more than three years old.  They also listed $16,009 in priority wage and tax debts.

Among the general unsecured creditors was Prestige Stone, which was listed as being owed $2,185 for stone supplies.

After the trustee objected to their proposed repayment plan, the debtors filed an amended plan which was confirmed on May 11, 2010. Under the confirmed plan, they are to pay the chapter 13 trustee $854 a month for 17 months, then $1,282 a month for 25 months, then $2,169 a month for 18 months, for a total of $85,626. After payment of the trustee's statutory commission, fees to the debtors' lawyer, priority tax and wage claims, and arrears on secured claims, the projected dividend on unsecured claims is 1 cent on the dollar.

The bar date for non-governmental creditors to file proofs of claim was June 1, 2010. Because Prestige Stone was not listed on the initial creditor list ("mailing matrix") filed by the debtors, it was not sent notice by the clerk of the commencement of the case, the meeting of creditors, and the claim bar date.[1] Prestige Stone did not file a proof of claim, but on July 4, 2010, the debtors filed a proof of claim on its behalf in the amount of $2,185. Excluding the Prestige Stone and eight other late-filed claims, the filed priority claims total $20,707, and the general unsecured claims total $202,478.

Subsequent to confirmation of the plan, David Nealey was convicted in the Circuit Court of Fauquier County, Virginia, of uttering a bad check to Prestige Stone Distributors. He was sentenced to imprisonment for two years, all of which was suspended on the condition, among

---

[1] On April 9, 2010, however, Prestige Stone was mailed a copy of the amended plan that was ultimately confirmed. That plan, in the section entitled "Treatment and Payment of Claims," expressly advised creditors, "All creditors must timely file a proof of claim to receive payment from the Trustee." Plan, § 8. Thus, Prestige Stone—which did not object to confirmation—had notice more than seven weeks prior to the claims bar date that it needed to file a proof of claim in order to be paid through the plan.

others, that he pay restitution to Prestige in the amount of $2,185.75.  The sentencing order directed the probation officer to "provide verification to the Court that the restitution is being paid through the defendant's bankruptcy proceedings directly to the victim." *Commonwealth v. David Lee Nealey*, Case No. CR10-143, p. 2 (Fauquier Co. Cir. Ct., December 6, 2010).

The debtors promptly filed on January 19, 2011, the amended plan that is currently before the court.  It proposes a slight ($1,290) increase in the plan funding, reduces the estimated dividend on general unsecured claims to 0%, and separately classifies the claim of Prestige Stone, which is proposed to be paid at 100 cents on the dollar.

## Discussion

The trustee objects to confirmation of the amended plan on two grounds: first that proposed plan discriminates unfairly by paying Prestige Stone 100 cents on the dollar while paying other unsecured creditors nothing; and second, that because the Prestige Stone proof of claim was filed after the claim bar date, there is no legal basis for the trustee to pay it.  The court will address each of the objections in turn.

### A.  Separate Classification of the Prestige Stone Claim

A central policy of the Bankruptcy Code is equality of distribution among creditors of equal priority.  *Begier v. IRS*, 496 U.S. 53, 58, 110 S. Ct. 2258, 2262-63, 110 L. Ed. 2d 46 (1990).  The Code does allow a chapter 13 plan to "designate a class or classes of unsecured claims," but—with a limited exception for co-signed consumer debts—the plan "may not discriminate unfairly against any class so designated."  § 1322(b)(1), Bankruptcy Code.  As this court has previously observed, a number of tests have emerged to assess whether classification discriminates unfairly.  *In re Delauder*, 189 B.R. 639, 643 (Bankr. E.D. Va. 1995).  Early cases

looked solely or primarily to whether there was a "rational" reason for the separate treatment, while later cases began "to look at practical considerations such as the importance of the classification to the debtor's rehabilitation" and to evaluate "whether the debtor acted in 'good faith' in setting up the separate classification." *Id.* In *Delauder*, this court endorsed a five-part test first articulated by *In re Husted,* 142 B.R. 72 (Bankr. W.D. N.Y. 1992), namely:

> 1. Whether there is a rational basis for the classification;
> 2. Whether the classification is necessary to the debtor's rehabilitation under chapter 13;
> 3. Whether the discriminatory classification is proposed in good faith;
> 4. Whether there is a meaningful payment to the class discriminated against;
> 5. The difference between what the creditors discriminated against will receive as the plan is proposed, and the amount they would receive if there was no separate classification.

*Delauder*, 189 B.R. at 643.  The court also noted, however, that while the *Husted* factors were helpful, "they do not constitute bright-line standards," and that "the court must conduct a flexible case-by-case analysis in determining whether a plan discriminates unfairly." *Id.* at 644.

It is of course true that a criminal restitution claim cannot be discharged in a chapter 13 case. § 1328(a)(4), Bankruptcy Code.  But there is a difference between the dischargeability of a claim and its priority.  Put another way, a claim is not entitled to priority of payment in bankruptcy simply because it is nondischargeable.  Only those debts that Congress has expressly specified in § 507(a), Bankruptcy Code, are entitled to priority over other unsecured debts. Although the list of priority claims includes certain type of debts that would also be nondischargeable, criminal restitution claims are not among those listed.  *In re Bennett*, 237 B.R. 918, 923 (Bankr. N.D. Tex. 1999).  Additionally, the Supreme Court has made it clear that a bankruptcy court cannot, under its general equitable powers, modify the priority scheme

4

established by the Bankruptcy Code. *United States v. Noland*, 517 U.S. 535, 543, 116 S. Ct. 1524, 1528, 134 L. Ed. 2d 748 (1996).

The cases are legion holding that a chapter 13 plan may not discriminate in favor of a particular creditor merely because the creditor's claim is nondischargeable. Rather, such claims are simply paid through the chapter 13 plan to the same extent as other unsecured claims, with the creditor being free, after the plan is completed and the debtor receives a discharge, to collect the unpaid portion of the claim directly from the debtor. Here, to be sure, the claim is not merely nondischargeable. Instead, the failure to pay it in full through the plan would place the husband in violation of a condition of his probation and at risk of incarceration. Imprisonment, in turn, would likely torpedo the completion of the plan, resulting in *no* payment even to the secured and priority creditors whose claims are being paid through the plan. Thus, separate classification of a criminal restitution claim that is a condition of probation arguably satisfies the *Husted* factors of both a rational basis for the classification and necessity for the debtor's rehabilitation under chapter 13.[2] The court can also assume that the classification is proposed in a good faith effort by the debtors to comply with the state court sentencing order. At the same time, there is no

---

[2] There is of course a countervailing policy argument that allowing separate classification of such claims provides an improper incentive for creditors to attempt an end run around the Bankruptcy Code by pursuing criminal prosecution in order to collect a civil debt. Here, the creditor's claim existed on the date of the bankruptcy filing. While criminal prosecutions are not stayed by a bankruptcy filing, *see* § 362(b)(1), Bankruptcy Code, at least some courts have held that initiation of such a prosecution by a creditor for the sole or predominant purpose of obtaining a restitution order constitutes a prohibited "act to collect . . . or recover a claim against the debtor that arose before the commencement of the case," in violation of the automatic stay. § 362(a)(6), Bankruptcy Code. *But see*, *Simonini v. Bell (In re Simonini)*, 69 Fed.Appx. 169, 171 (4th Cir. 2003) (holding that district court did not have power to enjoin state court criminal prosecution of debtor for giving a bad check to a casino, but declining to reach issue of whether the bankruptcy and subsequent discharge limited the penalties that could be imposed if the debtor were convicted).

"meaningful" payment—indeed, no payment at all—to the class discriminated against. It is true that the existing confirmed plan does not provide a significant payment to unsecured creditors. To that extent there is very little real difference, either in percentage or absolute terms, between what the unsecured creditors will receive as the plan is proposed and what they would receive in the absence of the separate classification. But to take away what little the unsecured creditors are currently slated to receive under the existing plan to fund a 100% payment to the restitution creditor is basically inequitable.

The reported cases addressing separate classification of restitution claims have uniformly denied confirmation. *See, e.g.*, *In re Crawford*, 324 F.3d 539 (7th Cir. 2003); *In re Bowles*, 48 B.R. 502 (Bankr. E.D. Va. 1985); *In re Williams*, 231 B.R. 280 (Bankr. S.D. Ohio 1999); *In re Limbaugh*, 194 B.R. 488 (Bankr. D. Or. 1996). As Judge Posner explained in *Crawford*, separate classification may be allowed "if without classification the debtor is unlikely to be able to fulfill a Chapter 13 plan and the result will be to make his creditors *as a whole* worse off than they would be with classification." 324 F.3d at 543 (emphasis added). After suggesting some hypothetical examples that might qualify, he explains why criminal restitution claims would not:

> At the other extreme is a nondischargeable debt consisting of a fine imposed, or restitution ordered, in respect of a criminal fraud that the Chapter 13 debtor committed . . . and he proposes a classification *under which the nondischargeable debt will be paid in full and the other creditors will receive nothing at all. Approval of such a plan would be unreasonable.* The effect of the plan if approved in such a case would be to make the debtor's other unsecured creditors pay his fine or restitution!

*Id.* (emphasis added; internal citations omitted).

Notwithstanding the strong language in *Crawford* and many of the other reported decisions, this court would not go so far as to hold that separate classification of restitution

6

claims is never permitted. Rather, each case must be assessed on its own facts. Had the debtors proposed a modified plan that increased the funding sufficiently to pay the restitution claim without prejudice to the dividend that unsecured creditors are receiving under the current plan, the court would be inclined to allow the separate classification. But that is not the case here. Accordingly, the court determines that the separate classification of the Prestige Stone claim discriminates unfairly against the other unsecured creditors, and for that reason the court will sustain the trustee's objection to confirmation.

B.  Failure to File a Timely Claim

Even if a plan could be confirmed that provides 100% payment of a criminal restitution claim while paying other unsecured creditors nothing, the trustee argues that no payment can be made to the creditor in the absence of a timely filed proof of claim. The court concurs.

The first date set for the meeting of creditors in this case was March 2, 2010, and the bar date for non-governmental creditors to file a proof of claim was therefore June 1, 2010. Fed.R.Bankr.P. 3002(c). A debtor may file a proof of claim on behalf of a creditor who has failed to do so, but any such claim must be filed no later than 30 days after the date the creditor's claim was due. Fed.R.Bankr.P. 3004. That date would have been Thursday, July 1, 2010. Although the debtor did file a proof of claim on behalf of Prestige Stone, it was filed three days after the extended bar date and is therefore untimely.

A creditor desiring to receive distributions in a chapter 13 case must file a timely proof of claim. Fed.R.Bankr.P. 3002(a), (c)(1); *In re Nwonwu*, 362 B.R. 705, 707 (Bankr. E.D. Va. 2007). This is true even if payment of the claim is expressly provided for in the plan. The court is empowered to extend the time for an infant or incompetent person; for the United States, a state,

or a subdivision thereof; for creditors whose claim arises from avoidance of a transfer or from rejection of a lease or executory contract; and for creditors with a foreign mailing address. Fed.R.Bankr.P. 3002(c)(1)-(4), (6). But there is no provision for extending the bar date simply because the creditor did not have notice of the case.[3] The claims bar date, moreover, may not be extended under the court's general power to extend deadlines. Fed.R.Bankr.P. 9006(b)(3).

Chapter 13 differs in this respect from chapter 7 and chapter 11, both of which make provision, albeit in different ways, for late-filed claims. In chapter 7, for example, a late claim may be paid where the creditor did not have notice or actual knowledge of the case in time to file a timely proof of claim, and the claim is filed in time to permit payment. § 726(a)(2)(c), Bankruptcy Code. Even where the creditor had notice, a late-filed claim may be paid to the extent that funds remain after all timely-filed claims have been paid in full. § 726(a)(3), Bankruptcy Code. And in chapter 11, a late-filed claim may be allowed where the delay was the result of excusable neglect. Fed.R.Bankr.P. 3003(c)(3) and 9006(b)(1); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). The excusable neglect standard, however, does not apply in chapter 13 cases, and Rule 9006(b) is very clear that the bar date in a chapter 13 case cannot be extended after the fact even where the creditor is not at fault. *Nwonwu*, 362 B.R. at 707. As explained by a leading treatise:

> Courts have uniformly held that no extension of the time fixed by Rule 3002(c) may be granted after the time has passed (except as specifically allowed by the provisions of Rule 3002(c)(1)-(6)). The court has no equitable power to extend the time fixed by Rule 3002(c).

---

[3] A creditor who was not listed as a creditor (and did not otherwise learn of the case) in time to file a timely proof of claim is not, however, without a remedy. Such claims are excluded from discharge and may be collected by the creditor after the case is concluded. §§ 523(a)(3)(A), 1328(a)(2), Bankruptcy Code.

9 Collier on Bankruptcy, ¶ 3002.03[1]; 15th ed. rev. 2008. "Thus, Rule 3002(c) is strictly construed as a statute of limitations since the purpose of a claims bar date is 'to provide the debtor and its creditors with finality' and to 'insure the swift distribution of the bankruptcy estate.'" *Nwonwu*, 362 B.R. at 708 (quoting *In re Johnson*, 84 B.R. 492, 494 (Bankr. N.D. Ohio 1988)).

It is true that payment of a late-filed claim in chapter 13 is not categorically prohibited. As this court has previously explained:

> [I]t is worth emphasizing that the claims bar date is not self-executing. That is, a claim filed after the claims bar date is not thereby deprived of its character as a claim but is simply subject to disallowance. Under the statutory scheme, a filed proof of claim "is deemed allowed" *unless* a party in interest objects. § 502(a), Bankruptcy Code. Among the grounds for disallowance are that "proof of such claim is not timely filed." § 502(b)(9), Bankruptcy Code. It could very well happen in a chapter 13 case, however, that no purpose would be served by objecting to a late-filed claim *if the plan were sufficiently funded to pay it without affecting the payout to other creditors*. Indeed, the debtor might prefer that such a claim be paid if the underlying liability was nondischargeable or if the claim was secured by a lien that, unless satisfied during the case, would remain at the conclusion of the plan. Accordingly, nothing in this opinion should be read as suggesting that a chapter 13 trustee is required to object to a late-filed claim or is prohibited (particularly after consulting with the debtor) from paying a late-filed claim *if there is no prejudice to other creditors*. Nor should this decision be read as precluding the debtor from proposing a modified plan that provides for payment of the claim if that can be done *without reducing the dividend to creditors who have filed timely proofs of claim*.

*Nwonwu*, 362 B.R. at 710. (emphasis added). In *Nwonwu*, however, the plan estimated a 100% dividend to unsecured creditors, only one relatively small unsecured claim had been filed, and the late-filing creditor's claim was secured by a lien that would remain at the conclusion of the case. In this case, by contrast, the plan not only does not provide for a 100% distribution to unsecured creditors, but allowance of the late-filed claim would take away what little distribution the unsecured creditors are slated to receive. Because a trustee may elect to pay a late-filed

9

claim only if there is no prejudice to creditors who have filed timely claims, no basis exists for the trustee to pay the late claim the debtors filed on behalf of Prestige Stone.

A separate order will be entered denying confirmation of the amended plan, without prejudice to the existing confirmed plan and without prejudice to the debtors' right, if they are able, to make direct payment of the restitution claim without reducing their payments to the trustee.

Date: _____  
Alexandria, Virginia

_____  
Stephen S. Mitchell  
United States Bankruptcy Judge

Copies to:

David L Nealey  
Heidi M Nealey  
10100 Chokecherry Court  
Manassas, VA 20110  
Debtors

Michael Jacob Owen Sandler  
12781 Darby Brooke Court  
Suite 201  
Woodbridge, VA 22192  
Counsel for the debtors

Thomas P. Gorman, Esquire  
300 N. Washington St., Suite 400  
Alexandria, VA 22314  
Chapter 13 Trustee